Good morning. May it please the courts, counsel, my name is Nick Morrow. I represent Christine Powell. The district court committed reversible error when it dismissed Ms. Powell's petition for count one and counts two. Both causes of action arising under our ERISA law. This case is a little bit unique in that a typical ERISA case would involve a claimant making a claim for benefits, the claimant challenging that. In this case, the insurer on its own initiative interpreted its policy and made a determination that it could and in fact did extend Scott Powell's conversion rights and continued his coverage retroactive to his termination with John Deere. Mr. Powell was an employee for John Deere for many years. He took advantage of an early retirement program and then died shortly thereafter of COVID-related complications during which he had a conversion right to convert his group policy issued by Minnesota Life into an individual life policy. And as noted, we are at the motion to dismiss stage and the district court incorrectly concluded that the only way for Ms. Powell to issue by Minnesota Life altered the terms of the plan by extending the 31 day window. And I would note that we're not asking anybody to alter the terms of the plan. The insurance policy is completely silent on the insurer's ability to extend the conversion deadline and to continue coverage. Now wait, you said entirely silent? It says no change in this policy balance, main writing. So tell me how it's silent. It's silent on whether the insurer may continue the conversion deadline or extend coverage retroactive to the termination. But it's not silent as to the existence of the deadline. It's not silent. So if it establishes a deadline and your argument is they extended it, why isn't that an alteration of the policy? In this particular insurance policy, it does say that you that the insurer, the insured, should apply for conversion within 31 days. There are other policies, and the case is actually relied upon by Minnesota Life, where there is much harsher language where the use of the word must, they must apply, the premiums must be received, in no event will extension be granted beyond 91 days. That type of language isn't in this particular plan. And all we have, our policy, and all we have right now is the policy. We don't have the actual totality of the plan. I do believe that there was a separate plan created for the voluntary early retirement program, which we have not been able to get into. And at some point, based on this letter, it's clear that DEER, delegated to Minnesota Life, the obligation to send conversion notices. And Minnesota Life acknowledges this when it sends a letter that says we conducted an audit. Well, what is the audit? Why is there an audit? And we've determined that you did not get your conversion notice. And that is, as we've alleged, because John Deere delegated that responsibility and asked Minnesota Life to do that. And it's inconceivable, at this point, we believe, that if Mr. Powell was alive and sent his premium checks in, that they wouldn't have cashed in and said, okay, great, here's your insurance. Because they've made a decision to both extend the conversion deadline and extend coverage retroactive to his termination. So they are soliciting back premium payments, which acknowledges an acknowledgment from them, if they're paid, that Mr. Powell is covered all the way through the February 24th letter, which would include the time of his death. And so... He dies before he gets the letter, right? Or anybody gets it. He dies before the letter can be gotten by anybody, right? Yes, that's correct. Isn't that an overwhelming... 19 days, right? About that, yes. So isn't that an overwhelming fact, an overwhelming hurdle for you that justifies a motion to dismiss? Well, only if the letter was improper. Whether Mr. Powell's alive or not doesn't change whether Minnesota Life had an obligation to send this letter and make the decision that it did, based on whatever communications it had with John Deere, whatever the voluntary separation plan said, which we don't know. We don't have those yet, because the case was dismissed at the dismissal stage. And so, if the letter was... If Minnesota Life should have written the letter, if it was a proper letter, then whether Mr. Powell was alive or not is irrelevant. Their decision that he should have gotten notice and that payment of premiums back to his termination date would continue coverage means he would have been covered on the date of his death, had all it took was the premiums to be paid. And again, this is all Minnesota Life's own interpretation of its policy. This is Minnesota Life conducting an audit, Minnesota Life reviewing its terms, and Minnesota Life concluding that it can and in fact should do what it did. And that is what is somewhat unique of this case, is because, generally speaking, the insurer gets up and says, hey, we get a lot of deference and discretion to how we've interpreted it. And we agree. This is how you interpreted it, and you went back on it when you realized, oh no, Mr. Powell died, and now we have to pay his benefits. And so, there are other issues that that raises, Your Honors. It's, well, why did Minnesota Life send conversion letters to other employees who retired under this same program Mr. Powell did? Did they send letters to other employees like Mr. Powell who, for whatever reason, didn't get there? Does your complaint make an allegation about that? Yes. What does it say? It alleges specifically that Minnesota Life gave conversion notices to other employees who retired at the same time as Mr. Powell, and that Mr. Powell did not get his. Why did they send those notices to other employees? Did they send other notices to employees like Mr. Powell who didn't get theirs? And have they accepted back premiums, as we sit here, have they accepted back premiums from other employees who, fortunately, did not pass away, who decided, you know what, I do want to take advantage of this. I do want insurance about going through. So you're talking about a notice back in September? Yes. Yeah, I thought you were talking about a letter like they sent in March, or February 24th, sorry, February 24th. Yes, thank you, Your Honor. We don't, we don't know. But you don't make any allegation about it? About other people got this letter? I think we argued that in our, yeah, but it's not your complaint. No, it's not our complaint. Proceed. Thank you. I misunderstood. Yeah, sorry, Your Honor. No, no, no, I just misunderstood which one you're talking about. These are risked cases, I say. So what is it that imposed a duty on Minnesota Life to send the conversion notice? I think that's a question that remains to be answered. Is it a communication from John Deere? Does the planned administrator delegate and direct a claims administrator to do that? I believe that's something that needs to be answered. If they did, then it's certainly a breach of the fiduciary duty, even as a claims administrator, to not send it. And I would note again, at this point, all we have is policy. We don't have the plan which describes who is the actual plan administrator. It might end up being Minnesota Life. We just don't know, because all we have is the policy. But we do know they conducted an audit for some reason. They determined in their audit that they needed to provide these notices and Mr. Powell didn't get his, so they sent in one. They solicited back-paying payments, meaning they wanted payments for September, October, November, December, January, February, which means that he was covered during that entire time if he pays the premiums, including the time of his death. And so it's not altering the plan, it's an interpretation of Minnesota Life's plan that they can do that. And it's odd. There's an odd scenario where an insurer makes an interpretation that favors the insured that is subsequently rejected by the court. And so that really is an interesting and unique case in that regard. The district court also concluded that the only way in which plaintiffs could prevail would be if the letter created a new window during which Mr. Powell could apply for conversion, meaning, okay, even if there is a new window, it starts February 24th. I believe that's what the district court said. But even that ignores the letter because the letter talks about continuing coverage, retroactive determination date, as long as premiums are paid back. So whether he's covered under the existing policy because he paid premiums or a new conversion window, either way, according to Minnesota Life, he's covered. And so, again, there are a lot of questions that I think remain unanswered. And going back to, did Minnesota Life send letters like this to other people? Now, Your Honor, you asked if we pled that. I can't believe that because I don't know. But if they did, that's an indication that they're interpreting this policy consistent with their letter, not their position here in court today. If they've accepted premium payments, are they accepting those for policies that don't exist? Are there Minnesota Life insurers walking around right now who've paid back premiums, who are paying premiums only to learn eventually that, you know what, that was a mistake, we shouldn't have done it, here's your premiums back? Those are relevant questions here because it all goes back to how Minnesota Life is consistently interpreting this policy and what they should be held to based on the letter. Your Honor, I would briefly just also touch on count two, which is the claim for equitable relief. I do believe the district court did ignore this court's prior ruling in Silva, which held that a plaintiff can assert at this stage alternate theories of recovery, both under the direct claim and the make-or-break doctrine that an insurer can recover benefits under certain circumstances under this equitable claim. So to the extent that the court dismissed count two for those reasons, that should be reversed as well. With respect to the substance of that, we have alleged that Minnesota Life had a fiduciary duty. We've alleged that DEER delegated duties to communicate to its insurers regarding the conversion rights of those insurers participating in early retirement and taking all the facts in favor of the plaintiff. How can we dismiss this case without learning what those communications between DEER and Minnesota Life were? How can we dismiss this case without knowing what the audit was and why it was initiated and without knowing why Minnesota Life didn't send a letter to Scott Powell right away, subsequently did, and whether it sent it to other folks? And so we do believe that there's equitable relief that's filed as an alternative theory that Minnesota Life breached its fiduciary duty. We have pled that and that as a result of that breach, she has been denied benefits and should be entitled to them. I'm going to reserve the rest of my rest of my time for rebuttal unless the court has any other questions for me at this time. Very well, thank you. Good morning, Your Honor. Good morning. May it please the Court, Counsel, Molly Hamilton, and Pauline on behalf of Defendants, Minnesota Life Insurance Company, and Securian Life Insurance Company. I think it's important to recognize that while ERISA is a very comprehensive statute, it does not encompass or resolve every perceived scenario or alleged wrong. And my distinguished counsel raises a lot of facts that he thinks are relevant, but based on what was pleaded in the 502a1b and 502a3 as written in ERISA, there are no plausible claims in this case. I'll start with 502a1b. Those types of claims to be viable have to allege facts showing that the plaintiff was denied benefits due under the terms of the plan or to enforce rights under the terms of the plan. Well, counsel, let me interrupt you. You use the term plan. The other side says, oh, we got some policy. Do we have a plan? Do we have a policy? I notice the district court goes back and forth on whether it is an insurance policy, and then later they call it a plan, and I think they're talking about the policy. So help me. Do we have a plan in this case? Yes, the policy is the plan. Okay, what says that? 29 U.S.C. 1102. No, it doesn't say policy is a plan. It just mentions a plan, doesn't it? No, it says in order to be a plan, you have to have a written instrument requirement. That's a policy, and it must have procedures for amending the plan, identifying the beneficiaries, the source of financing, and the procedures for administering the benefits. That's a policy. So the policy in this case, which the complaint admits is the governing instrument, by the way, meets all the requirements of a 29 U.S.C. 1102 plan. So the confusion is there isn't some other plan that's missing from the record. The policy is the governing plan instrument. The complaint admits that that is in fact true, and in fact that the policy unambiguously describes the conversion right, which is that an insured converts his or her insurance by applying for an individual policy and paying the first after group coverage terminates. The complaint concedes that coverage terminated August 31st, 2020. The complaint concedes that Mr. Powell did not do anything to convert his coverage in the five months thereafter prior to his unfortunate death. So under the terms of the plan, he's not entitled to benefits. Well, how can you say that this is unambiguous when the insurance company itself, in a writing, states that weeks and weeks after the termination of this person's employment, there's still a right to convert the life coverage? Does the company not understand what its own plan says? No, I think that's a great question. I think we're talking about two different things. We're talking about what the plan says, and then we're talking about a summary document that for a certain group of employees allowed for a new conversion period. I don't, there's nothing in that letter that's interpretive, and there's also nothing in that letter that would let it constitute a plan document. So again, technically under, I mean, under a 502A1B claim, that letter cannot be considered a plan document. This is signa via mara. There are communications that go out that describe plan terms, but they cannot in and of themselves constitute plan terms for purposes of a 502A1B claim. That's in signa via mara. So this letter cannot somehow give plaintiff a right to 502A1B. But why can't the letter explain what the plan said and means? It can, but for purposes of 502A1B, it is not a term of the plan, because it's not a plan document. I know that the world of ERISA is a little confusing, but that is, in order for a 502A1B claim to be plausible, you have to be looking at a plan document, and you have to be enforcing its terms. Well, let me ask it differently. Can you explain, is there anything in the record that explains why this February 24th letter was sent? Other than the contents of the letter that say that there was an audit and that they were sending gratuitously or as a courtesy, sending conversion packets, and a certain group of employees didn't receive them. But that's all the context I have are the denial letter and the February 24th letter. But as I'm understanding your position, it is that the letter is inconsistent with the terms of the plan-slash-policy. To the extent that they would be inconsistent, that still doesn't get you a 502A1B claim. That's not my question. Oh, okay. Sorry. Is the letter inconsistent with the terms of the plan-slash-policy? Only to, I guess, to the extent it is gratuitously extending a conversion period for certain people. I guess, I don't know if I'd say inconsistent, I would just say it's providing an opportunity that otherwise wouldn't be available. It counsels gratuitously, your turn, contrary to the 31-day deadline. To the extent it is extending the 31-day deadline, yeah, I would agree with that. Yeah, it has to. So they have a remedy with an insurance commissioner, right? For fraudulent practice by an insurance company or something like that? I can't answer that because I don't know what I'm talking about. It was meant to be a lot rhetorical. But also, frankly, just to test because this is really odd. I mean, this is really, really odd. And I know what your provision says about no change unless made in writing. You've had pretty good luck with courts with that, you being the insurance company. But goodness gracious. I certainly understand that it's a unique factual scenario. And I think this is where, if you've had a viable 502A3 claim, this is maybe a circumstance with slightly different facts where you could have a viable 502A3 claim. However, there isn't one in this complaint. And if we're focusing on the notice issue, again, if you read what 502A3 says, and I think a lot of times all it says is appropriate equitable relief. There's more to 502A3. It has to be appropriate equitable relief to address violations of ERISA or the plan or to enforce provisions of ERISA or the plan. So there's got to be a fiduciary obligation that is either under the plan or ERISA to provide notice of conversion rights. The plan does not require notice. In cases cited by Mr. Morrow, like HAUTH, H-A-U-T-H, they had provisions in there where it was guaranteed that you'd get notice. This conversion right makes no reference to notice. So the plan doesn't require notice. And as the district court correctly found, ERISA doesn't require notice. Only in the context of health care benefits is a COBRA notice required. So a 502A3 claim can't survive on saying, well, they were going to voluntarily provide notice as a courtesy. It's not required in the plan. It's not required under ERISA. It cannot form the basis of a 502A3 claim for that reason. In addition, as pleaded, the 502A3 claim is pleaded entirely as a repackaging of count one, which is a 50A1B claim. It's clear. It says it seeks an order directing defendants to comply with the terms of the conversion provision under the plan in its letter of February 24, 2021, and to pay the life insurance benefits rightfully due under the plan to plaintiff. That's a 502A1B claim. That's exactly what they said in count one. More importantly, this court has obviously recognized, as has the Supreme Court, that if you're going to have a 502A3 claim, you need a typically classic equitable type of relief that you're seeking in an equitable theory. And that doesn't exist in this complaint. Plaintiff has, at the hearing, they said, well, it's really an equitable estoppel claim that we're pleading. There's no reference to estoppel in the complaint, and there's no reference. I think Mr. Morrow conceded this. He said, we say a breach of fiduciary duty. Well, that's not sufficient pleading because you also need to plead the elements of both equitable estoppel and breach of fiduciary duty, which this court has recognized both of those have detrimental reliance and reasonableness associated with them. Ms. Cawley, Mr. Morrow, in his argument, seemed to suggest that the case should go forward so that he could do some discovery about communications between Deere and your clients about, I think, having to do with who was taking responsibility to give notice. Would that make a difference? No, Your Honor, it wouldn't because of what I just sort of was explaining, perhaps not artfully, but that for a 502A3 claim, you have to be obligated to do something under the plan, which is the policy as written, or ERISA. And as the district court correctly concluded, the policy doesn't require notice. Does it require notice of Deere or by Deere? Does it require notice by Deere? I don't believe that Deere has any fiduciary obligation to provide notice because of under ERISA. It's only if it involves the health of your plan. I don't know what defense clause it is. Does the policy impose a duty on Deere to give notice of conversion rights? Oh, I'm sorry. No, Your Honor. Going back, sorry, to the 502A3 claim again, it's not pleaded sufficiently to, even though, I mean, it certainly doesn't set forth any classic type of equitable claim, but even if we are going to accept the premise that it's trying to plead an equitable estoppel claim, the elements are simply not there. There's no detrimental reliance. There's no reference to materiality, reasonableness. And quite frankly, under these facts, I don't know how you could, as pleaded, you could actually conjure any kind of reliance. The plan is very clear about what you need to do to accomplish to get your conversion rights. There are no allegations that my clients did anything in that five-month period that misled plaintiff about what was required under the policy, misrepresented anything about what was required under the policy, or made really any communications about what was required under the policy. The allegation is that Deere told plaintiff that, yeah, there's going to be a conversion notice. My client can't be responsible for whether that was a misrepresentation by Deere or not. It's not something my client would be responsible for. And there are no other facts that would identify something my clients did during that five-month period that led Mr. Powell to not follow the clear plan and convert his rights. I think the district court was correct that what has happened in this case was that this letter went out on February 24, 2021, and plaintiff understandably tried to take advantage of it by sending in a beneficiary statement. But there's no reliance there. As pleaded, the facts don't support that. I'm happy to answer any other questions the court has. Thank you for your time. Thank you. Thank you. Section 1102A1, which I believe counsel referenced in her argument, does require every benefit plan to provide one or more named fiduciaries who are jointly and separately liable to have authority to control and manage the administration of the plan. That's nowhere to be found in the policy itself. We believe the plan is something bigger, and we also believe that the plan... Well, what about the point by the other side, which was new to me? I don't think it was briefed. That ERISA says the life insurance policy is the plan. If that's all there is, but the policy, if that's just the plan, then it doesn't include... No, no, I'm talking about the legal point. Do you know anything about the legal point? I suppose it could be, but it would at least need to include who the fiduciary is responsible for controlling and managing the operation and administration, which the plan is completely silent on. We don't know. Is Minnesota Life just a claims administrator, or is it a plan administrator under this plan? We don't know because that policy doesn't say either way. In addition to that, the ERISA law is clear that an employee is entitled to the summary plan description, which the record is completely void whether Mr. Powell received that or not. Traditionally, that would be where the conversion rights would be explained a little further. To say that this plan directs Mr. Powell how to convert his policy, I think it's overstating it. It just says you have to submit an application. What's the application? How do I get it? What's my premium going to be? None of that information was provided to Mr. Powell, and we do believe that Deere... It does infer, I'm sorry to break into your rebuttal, but it does infer what the premium is. Now proceed. If you read the plan, it says based on your age, based on this, based on that. Typical insurance talk. Go ahead. Sure. It infers it's probably going to go up. Yes, exactly. I'll say that. But it doesn't tell him really anything on how to convert. And clearly something happened. Minnesota Life, clearly something happened where John Deere told Mr. Powell that you're going to get this notice. That's part of our complaint. Minnesota Life, we've pled that Deere delegated that to its claims administrator. Maybe it's its plan administrator. We don't know what Minnesota Life's role was, and they didn't do it. And so I would just end with, we're not just talking about a conversion window. And counsel said, Mr. Powell's trying to take advantage of it. Minnesota Life sent a letter soliciting back premium payments. They're trying to sell insurance. They want Mr. Powell to be alive. They want him to send that check in. And they're going to continue to insure him because they think he's probably insurable because he's gone on this far. So I would just end with, Mr. Powell's not trying to take advantage of anything other than Minnesota Life's own interpretation of its policy. We respectfully request that this report's dismissed with counsel one and two. Thank you for the opportunity. Thank you, counsel. Thank you both for your appearance today and your arguments and briefing. Case is submitted, and we will issue an opinion in due course.